# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 16-951


**SUZANNE BAEZ**

**VERSUS**

**HOSPITAL SERVICE DISTRICT NO. 3 OF ALLEN PARISH, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2014-082
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**BILLY HOWARD EZELL**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Billy Howard Ezell, and Shannon J. Gremillion, Judges.


**AFFIRMED.**

**Chris James LeBlanc**
**Watson, Blanche, Wilson & Posner**
**Post Office Drawer 2995**
**Baton Rouge, LA 70821-2995**
**(225) 387-5511**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Hospital Service District No. 3 of Allen Parish**

**Nicholas Gachassin, III**
**Julie Savoy**
**Gachassin Law Firm**
**P. O. Box 80369**
**Lafayette, LA 70598**
**(337) 235-4576**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Dr. Samir Abdou Tomajian**

**Zachary R. Christiansen**
**The Bowling Law Firm, APLC**
**1615 Poydras St., Suite 1050**
**New Orleans, LA 70112**
**(504) 586-5200**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Suzanne Baez**

**EZELL, Judge.**

Suzanne Baez appeals a trial court judgment granting summary judgment in favor of Hospital Service District No. 3, d/b/a Allen Parish Hospital, and Dr. Samir Tomajian. Summary judgment was granted in a malpractice suit Ms. Baez filed against defendants alleging their malpractice caused her father's death. Ms. Baez also claims the trial court erred in denying her motion to file a surreply and in failing to grant her a continuance. For the following reasons, we affirm the judgment of the trial court.

## FACTS

Adolph Baez travelled on a chartered bus trip from San Antonio, Texas, to the Coushatta Casino in Kinder, Louisiana, on March 22, 2012. His sister, Olga Trevino, organized the trip. The group arrived at the casino that afternoon and spent the night. Around 10:30 the next morning, Ms. Trevino received a call informing her that her brother had passed out. Mr. Baez was transported to the Allen Parish Hospital by ambulance, and his sister travelled in the ambulance with him.

Upon his arrival at the hospital at 10:45 a.m., Mr. Baez reported that he felt weak and passed out. He had not eaten that day. He denied that he was in any pain. He also reported a history of diabetes and hypertension. The hospital intake records indicated that his blood pressure was 94/41 and his pulse was 58. His temperature was 98.4 degrees. Lab work, a chest x-ray, and an EKG were ordered. Dr. Samir Tomajian, the emergency room physician, evaluated Mr. Baez at 11:10 a.m. Upon taking Mr. Baez's history, Dr. Tomajian discovered that Mr. Baez previously suffered a myocardial infarction and that a cardiac bypass was performed. Dr. Tomajian then also ordered a troponin test.

The EKG revealed a right bundle branch block and an old infarction. Lab results indicated a BNP of 2000, BUN 53, creatinine 3.33, CK-MB 7.8, and troponin .06. Dr. Tomajian met with Mr. Baez again to discuss the results of the tests. Dr. Tomajian testified that he explained the gravity of the situation to Mr. Baez and that his condition could worsen or lead to his demise. Dr. Tomajian further testified that he held Mr. Baez's hand, told him his condition was critical, and he needed to be evaluated by a cardiologist at a larger facility. He told Mr. Baez he was suffering from before congestive heart failure. Dr. Tomajian stated that Mr. Baez was worried about getting back to Texas. Dr. Tomajian then left Mr. Baez with his sister to discuss the situation. When Dr. Tomajian went back to talk to Mr. Baez, he and his sister were gone.

Ms. Trevino testified that she was not in the room when the doctor initially talked to her brother. She did hear the doctor tell her brother that he was not going to release her brother until he was stabilized. She testified that her brother wanted to leave right away. The bus was scheduled to leave for San Antonio at 3:00 p.m. The doctor said he was not letting Mr. Baez go until he ate something. Lunch was ordered, and her brother did eat something. Her brother told her several times he wanted to leave the hospital and get on the bus. She tried to talk him out of leaving the hospital, but he got mad at her. Ms. Trevino testified that she even offered to go to Lake Charles with him so they could take a flight home, but he refused.

The Allen Parish Hospital records indicate that at 11:00 a.m. and 11:30 a.m., Mr. Baez and his sister were worried about catching the bus back home. At 12:30 p.m., they requested to leave as soon as possible so they could board the bus to San Antonio, because they feared they would be stranded. The nurse explained to them that Mr. Baez needed to contact the emergency room as soon as he got home to be

admitted to the hospital. A representative of the hospital called the casino at 12:40 p.m. to get transportation back to the casino. Mr. Baez's IV was disconnected at 1:00 p.m., and the nurse discharged him at 1:05 p.m.

When they got on the bus to leave, Mr. Baez sat in the last seat by the window with his feet propped up on the other seat. Ms. Trevino's friend and the friend's husband sat on the seat across the aisle from Mr. Baez. Ms. Trevino's husband sat in the seat in front of her brother, and she sat across the aisle from her husband. The bus made a stop in Sealy, Texas. Mr. Baez did not get off the bus. They brought him a hamburger and a soda, but he only took a few bites. The bus then stopped at Columbus, Texas. Ms. Trevino's friend informed her that Mr. Baez's eyes had been closed for some time. When Ms. Trevino checked on her brother, he did not respond.

The bus driver pulled over and called emergency medical services, and an ambulance was on the scene within five minutes. Records from the Colorado County Emergency Medical Services indicate that Mr. Baez was not breathing and had no pulse. CPR was performed. His pulse returned, and he was intubated. He was taken to Columbus Community Hospital. Shortly after arriving at the hospital, Mr. Baez died.

On November 14, 2013, a medical review panel rendered its opinion. Ms. Baez then filed suit against Dr. Tomajian and Allen Parish Hospital on February 21, 2014. Both of the defendants filed motions for summary judgment; Allen Parish Hospital on April 1, 2016, and Dr. Tomajian on April 15, 2106. A hearing on the motions was held on September 22, 2016.

Having reviewed the memorandum and documents introduced for and against summary judgment, including Ms. Baez's expert affidavit, the trial court

granted both of the defendants' motions for summary judgment. Ms. Baez then filed the present appeal.

## SUMMARY JUDGMENT

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action . . . . and shall be construed to accomplish these ends." La.Code Civ.P. art 966(A)(2).[1] In reviewing the trial court's decision on a motion for summary judgment, this court applies a de novo standard of review. *Jackson v. City of New Orleans*, 12-2742, 12-2743 (La. 1/28/14), 144 So.3d 876, *cert. denied*, ____U.S. ____, 135 S.Ct. 197 (2014).

The burden of proof is on the mover unless the mover will not bear the burden of proof at trial, in which case the mover is not required to negate all essential elements of the adverse party's claim, but only to point out to the court the absence of factual support for one or more of the elements necessary to the adverse party's claim. La.Code Civ.P. art. 966(D)(1). "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

"After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

> A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which

---

[1]Louisiana Code of Civil Procedure Article 966 was amended by Acts 2015, No. 422, and was effective January 1, 2016, so the amendment applies in this case since the hearing on the motions was heard on September 22, 2016.

4

reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.

*Jackson*, 144 So.3d at 882.

The applicable substantive law determines materiality, so we must examine the substantive law applicable to medical malpractice cases to determine whether a particular fact is in dispute. *Id.*

The requirements of establishing malpractice based on the negligence of a physician are found in La.R.S. 9:2794(A), which requires that a plaintiff establish: (1) the standard of care applicable to the doctor; (2) a violation by the doctor of that standard of care; and (3) a causal connection between the doctor's alleged negligence and the plaintiff's injuries. The standard of care is generally that degree of knowledge or skill possessed or the degree of care ordinarily exercised by doctors licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances. La.R.S. 9:2794(A)(1). "However, emergency room physicians are held to the standard of care of specialists in emergency care." *Wright v. HCA Health Servs. of Louisiana*, 38,427, p. 7 (La.App. 2 Cir. 6/23/04), 877 So.2d 211, 215.

"The plaintiff in a medical malpractice suit against a hospital has a burden of showing that the hospital personnel negligently departed from the recognized standard of care afforded by hospitals in the area for the particular malady involved." *Jones v. Rapides Gen. Hosp.*, 598 So.2d 619, 621-22 (La.App. 3 Cir. 1992); *Miller v. Tulane Univ. Hosp.*, 09-1740 (La.App. 4 Cir. 5/12/10), 38 So.3d 1142.

Expert testimony is required to establish the standard of care of both the physician and hospital in a medical malpractice action, unless the negligence

complained of is so obvious that a layperson can infer the negligence without the aid of expert testimony. *Pfiffner v. Correa*, 94-992 (La. 10/17/94), 643 So.2d 1228; *Miller*, 38 So.3d 1142.

In filing their motions for summary judgment, the defendants claimed that Ms. Baez had not offered any expert testimony to support her claims against them. On June 20, 2016, Ms. Baez opposed the motions for summary judgment with the affidavit of Dr. Carol DerSarkissian, a doctor practicing in New York and board certified in emergency medicine. Ms. Baez claims that Dr. DerSarkissian's affidavit is sufficient to overcome the defendants' motions for summary judgment. The trial court disagreed and granted both motions for summary judgment because "the expert's affidavit does not set forth a factual foundation in support in regards to causation. I do think that it is more collusionary [sic] than fact based."

All parties cited this court's case in *Kinch v. Our Lady of Lourdes Regional Medical Center*, 15-603 (La.App. 3 Cir. 12/9/15), 181 So.3d 900, in which this court affirmed summary judgment in favor of a doctor, finding that an affidavit opining that the doctor breached the standard of care was speculative, and thus, the affidavit did not create a fact issue precluding summary judgment. This court specifically found that the expert doctor's affidavit was conclusory and merely stated that the defendant doctor breached the standard of care, failing to address causation.

In support of the defendants' motions for summary judgment, the medical review panel's opinion with reasons, which was properly authenticated and introduced by affidavit as now required by La.Code Civ.P. art. 966(A)(4), were filed in support of the motions for summary judgment. See Comment (c) to the 2015 amendments. The panel's written reasons provide:

6

It is the opinion of the Medical Review Panel regarding the defendants, **SAMIR TOMAJIAN, M.D. AND ALLEN PARISH HOSPITAL SERVICE DISTRICT #3,** that there is a material issue of fact, not requiring expert opinion, bearing on the liability for consideration by the Court, for the following reasons; There is conflicting written and testimonial evidence related to what was told to the patient, how the patient responded, who was involved in the discharge and who authorized and completed the discharge. It appears that there was not good communication between the nurses and doctor. The documentation is poor and does not allow us to come to a decision.

If the process was followed appropriately then there was no breach because the patient would have understood the ramifications of his decision to leave. However if it was not followed, there might have been a breach if the patient was not appropriately discharged.

Allen Parish Hospital records were also filed in support of the motions for summary judgment. The nurses' notes indicated that (at 11:00 a.m., 11:30 a.m., and 12:30 p.m.) Mr. Baez and his sister voiced their concerns about getting back to the casino and catching the bus back to San Antonio. At 12:40 p.m., the casino was called for transportation, and at 1:05 p.m., the nurse discharged Mr. Baez with instructions to go to the closest emergency room once he got home. Hospital records indicated that he verbalized an understanding of the instructions. As noted earlier, Dr. Tomajian testified that he explained the gravity of the situation to Mr. Baez. When Dr. Tomajian attempted to speak with Mr. Baez again, he had already been discharged. Hospital records indicate that Mr. Baez left before signing receipt of the HIPAA privacy notice and authorization for emergency medical treatment was signed.

Dr. DerSarkissian's affidavit indicated that she reviewed the medical records of both Allen Parish Hospital and Columbus Community Hospital, the depositions of Dr. Tomajian and Ms. Trevino, the medical review panel opinion and submissions, and the AMA policy of Allen Parish Hospital. Dr. DerSarkissian concluded that "had the nursing staff of Allen Parish Hospital and Dr. Tomajian

not deviated from the standard of care, Mr. Baez would have been treated for his heart failure and likely survived."

While the AMA policy of Allen Parish Hospital is not part of the record, Dr. DerSarkissian's affidavit states that the policy provided:

> *Any patient who refuses an EMS (Emergency Medical Screening), treatment, medication, hospitalization, or transfer to appropriate facility that has been advised by the ED physician, or an attending physician, must sign a Release, Leaving Against Medical Advice/Refusal of Treatment form.*

Dr. DerSarkissian then goes on to state that:

> The AMA Protocol requires that the "RN and/or physician shall discuss with the patient and/or family, the potential complications and risks that may occur if the patient leaves prior to the physician discharging the patient." Under The AMA Protocol, if after explanation of the potential consequences, the patient still wishes to leave, an AMA form should be signed by the patient and placed in the chart. Alternatively, if there is a refusal to sign this AMA form, the refusal to sign the AMA form should be noted on the physician t-sheet and/or nurses' notes.

While Dr. DerSarkissian alleges that Allen Parish Hospital and Dr. Tomajian violated the standard of care in treating Mr. Baez, she never specifically relates how these violations caused Mr. Baez's death. Mr. Baez insisted on leaving the hospital and getting back to the casino to board the bus home, which is well-documented by the nurses' notes. Dr. Tomajian testified that Mr. Baez's main concern was returning to the casino, even after Dr. Tomajian told Mr. Baez how grave his condition was. The nurses' notes indicate that Mr. Baez was told to go to an emergency room when he got home, further stressing to him the serious nature of his condition before he left the hospital. Ms. Baez agreed that he wanted to get back to the casino to catch the bus, and she could not even persuade him to stay and take an alternative means home. While there is no signed AMA form, nothing in the medical records indicated that Mr. Baez was not told how grave his

condition was. All evidence, including his own sister's testimony, established that there was concern for Mr. Baez's health, which had been relayed to him, before he left the hospital. We find no genuine issue of material fact.

We agree with the trial court that there is no expert evidence in the record that Mr. Baez's subsequent death was caused by any violation of any standard of care by either Allen Parish Hospital or Dr. Tomajian. The trial court did not err in granting the motions for summary judgment filed by Allen Parish Hospital and Dr. Tomajian.

**SURREPLY**

In her second assignment of error, Ms. Baez argues the trial court erred in denying her motion to file a surreply. She argues that La.Code Civ.P. art. 966(D)(2) implies that the trial court can and should admit additional documents at its discretion.

On July 5, 2016, Ms. Baez filed a motion to file a surreply to the defendants' reply to her opposition to their motion for summary judgment, which was granted by the trial court. Ms. Baez attached a supplemental affidavit from Dr. DerSarkissian to her surreply. The defendants opposed this motion and filed a joint motion to vacate the ex parte order granting Ms. Baez's motion to file a surreply. On July 25, 2016, the trial court signed an order vacating the order which granted Ms. Baez's motion to file a surreply.

"The purpose of a surreply is to enable the non-movant to contest matters presented for the first time in the opposing party's reply." *Nix El v. Williams*, 174 F.Supp.3d 87, 92 (D.D.C. 2016). "A surreply may not be used simply to correct an 'alleged mischaracterization,' . . . or to reiterate arguments already made." *Id.*

9

Louisiana Code of Civil Procedure Article 966(B) provides for the filing of motion for summary judgment, opposition, and reply as follows.

> B. Unless extended by the court and agreed to by all of the parties, a motion for summary judgment shall be filed, opposed, or replied to in accordance with the following provisions:
>
> (1) A motion for summary judgment and all documents in support of the motion shall be filed and served on all parties in accordance with Article 1313 not less than sixty-five days prior to the trial.
>
> (2) Any opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with Article 1313 not less than fifteen days prior to the trial.
>
> (3) Any reply memorandum shall be filed and served in accordance with Article 1313 not less than five days proper to the hearing on the motion. No additional documents may be filed with the reply memorandum.

We first observe that La.Code Civ.P. art. 966(B) does not provide for the filing of a surreply memorandum. It only allows for the filing of a motion for summary judgment, opposition, and a reply. Furthermore, even if we considered Ms. Baez's motion to file a surreply as a reply memorandum, she would not be allowed to file Dr. DerSarkissian's supplemental affidavit with the surreply because La.Code Civ.P. art 966(B)(3) does not allow for the filing of additional documents with the reply.

Even if La.Code Civ.P. art. 966 permitted the filing of a surreply, we also find that it would not have been timely. Louisiana Code of Civil Procedure Article 966(B)(3) provides that a reply memorandum shall not be filed less than five days before the hearing. Comment(d) to the 2015 amendments provides that the trial court and the parties have the ability "to enter in to [sic] a case management or scheduling order or other order to establish deadlines different from those provided

by this Article. . ." but the time to file a motion for summary judgment or oppose the motion cannot be shortened.

At the time Ms. Baez filed her motion to file a surreply, the hearing was set for Wednesday, July 6, 2016. Louisiana Code of Civil Procedure Article 5059 provides that in the computation of time, the last day of a period of time is to be included in the period of time allowed by law. However, if the period is less than seven days, legal holidays are not included. La.Code Civ.P. art 5059(3). In that case, Ms. Baez should have filed her motion to file surreply on June 28, 2016, five days before July 6, not including Saturday, Sunday, or July 4.

For these reasons, we find no abuse of discretion by the trial court in denying Ms. Baez's motion to file a surreply with its supplemental affidavit.

## CONTINUANCE

Ms. Baez's claims that the trial court abused its discretion when it denied her request for a continuance. She argues that the defendants' reply memorandum sought to raise admissibility concerns regarding the testimony of Dr. DerSarkissian and transform the summary judgment hearing into a *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), hearing on the admissibility of Dr. DerSarkissian's expert testimony. She claims that discovery was not complete and that the defendants did not attempt to take Dr. DerSarkissian's deposition.

"The denial of a motion for continuance will not be disturbed absent a showing of an abuse of discretion by the trial court." *Newsome v. Homer Med. Ctr.*, 10-564, p. 2 (La. 4/9/10), 32 So.3d 800, 802. Louisiana Code of Civil Procedure Article 966(C) provides that "[u]nless otherwise agreed to by all of the parties and the court . . . . [f]or good cause shown, the court may order a

11

continuance of the hearing." In written reasons for judgment, addressing Ms. Baez's motion to file a surreply, the trial court ruled that "[i]n light of the time that his case has been pending, delay in retention of a medical expert by plaintiff and the issues raised in defendants[] reply, the court does not find good cause."

The medical review panel opinion was rendered in November 2013. Ms. Baez filed her petition for damages on February 21, 2014. The motions for summary judgment were filed in April 2016, two years after the petition was filed. Dr. DerSarkissian's affidavit is dated June 14, 2016. The hearing on the motions for summary judgment was originally set for May 18, 2016, but was reset to July 6, 2016, by agreement of all the parties. Since Ms. Baez's motion for leave to file her surreply was heard on this date, the hearing on the motion for summary judgment was finally heard on September 22, 2016.

We find that Ms. Baez had ample time to secure an expert witness in this case before the motions for summary judgment were filed and did secure expert testimony which was considered for the purposes of summary judgment. Furthermore, the trial court specifically ruled that emergency medicine is a specialty and that the locality issue of expert testimony was not at issue and based its decision on the failure to establish with expert testimony that any negligence on the part of Allen Parish Hospital or Dr. Tomajian was the cause of Mr. Baez's death.[2] We find no abuse of discretion in the trial court's decision to deny a continuance of the hearing on the motions for summary judgment.

---

[2] A hospital's nursing staff standard of care is judged according to the locality rule, while "emergency room physicians are held to the standard of care of specialists in emergency care." *Wright v. HCA Health Servs. of Louisiana*, 38,427, p. 7 (La.App. 2 Cir. 6/23/04), 877 So.2d 211, 215.

For the reasons set forth in this opinion, the judgment of the trial court granting Dr. Tomajian's motion for summary judgment and granting Allen Parish Hospital's motion for summary judgment is affirmed. Costs of this appeal are assessed to Suzanne Baez.

**AFFIRMED.**