# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 21-187

**AKIL AZIZ**

**VERSUS**

**DR. MICHAEL L. BURNELL, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 18-C-4697-C
HONORABLE LEDRICKA THIERRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Sharon Darville Wilson, Judges.

**REVERSED AND REMANDED.**

Valex Amos, Jr.
2014 W. Pinhook Road, Suite 404
Lafayette, LA 70508
(337) 291-9115
COUNSEL FOR PLAINTIFF/APPELLANT:
    Akil Aziz

Michael W. Adley
Adam P. Gulotta
Judice & Adley
P. O. Drawer 51769
Lafayette, LA 70505-1769
(337) 235-2405
COUNSEL FOR DEFENDANTS/APPELLEES:
    Dr. Michael L. Burnell
    Michael L. Burnell, M.D., A Professional Medical Corporation

**KYZAR, Judge.**

In this medical malpractice action, the plaintiff, Akil Aziz, appeals from the trial court's grant of summary judgment in favor of the defendant, Dr. Michael L. Burnell, dismissing Mr. Aziz's claims against him, with prejudice. For the reasons herein, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

The basic facts of this case are not seriously in dispute. Dr. Burnell performed a colonoscopy on Mr. Aziz on September 23, 2014, after which Mr. Aziz was discharged and instructed to contact him concerning any post-procedure complications. Dr. Burnell practices medicine under the umbrella of a professional medical corporation, Michael L. Burnell, M.D., A Professional Medical Corporation (the Corporation).

The following facts are disputed. Mr. Aziz alleged that he began experiencing abdominal pain on September 24, 2014, and, in accordance with his discharge instructions, he contacted Dr. Burnell's office. He alleged that although Dr. Burnell's nurse said she would relay the message to him, Dr. Burnell never returned his call. Mr. Aziz alleged that he placed a second call to Dr. Burnell's office on September 25, 2014, with the same result. He alleged that he presented to the Lafayette General Medical Center Emergency Room on September 26, 2014, with complaints of worsening abdominal pain, after which testing revealed he had suffered a perforated colon. As a result, he alleged that he underwent emergency corrective surgery and extended hospitalization, which led to his permanent use of a colostomy bag.

On September 17, 2015, Mr. Aziz requested that his medical malpractice claim against Dr. Burnell be reviewed by a medical review panel. On July 25, 2018, the medical review panel rendered an opinion finding a non-harmful breach of the

standard of care on the physical-examination issue and no breach on the informed-consent issue. However, the medical review panel found that "there is a material issue of fact regarding phone call communication. The evidence is not clear."

Mr. Aziz filed the instant petition on October 22, 2018, alleging malpractice on the part of Dr. Burnell, individually, and as a "self-employed physician . . . liable for the actions of [his] employees, physicians, residents, nurses, medical and related staff under the doctrine of Respondeat Superior **LA. C.C. Art 2320.**"[1] Although Mr. Aziz's petition alleged five instances of negligence by Dr. Burnell, four of his allegations were dismissed pursuant to a September 13, 2019 consent judgment after he failed to oppose Dr. Burnell's motion for partial summary judgment. Thus, the sole remaining allegation of negligence pertained to Dr. Burnell's failure to communicate with Mr. Aziz following his colonoscopy:

> Mr. Aziz placed multiple calls to Dr. Burnell's office in order to notify him of persistent abdominal pain; Mr. Aziz did not receive any return calls from Dr. Burnell's office. Mr. Aziz subsequently sought delayed medical attention at the Lafayette General Medical Center Emergency Room. If Dr. Burnell had known of Mr. Aziz's abdominal pain at the time of the initial phone call, immediate medical intervention would have been implemented. In all likelihood, Mr. Aziz would have avoided major abdominal surgery (colectomy), post-surgical respiratory failure, and permanent colostomy.

On May 14, 2020, Dr. Burnell moved for a second partial summary judgment, regarding his alleged vicarious liability. He argued that he was not liable to Mr. Aziz via respondeat superior because the medical staff was employed not by him, but rather by the Corporation. Following a hearing, the trial court orally granted judgment in favor of Dr. Burnell. It further allowed Mr. Aziz to amend his petition to add the Corporation as a defendant. A written judgment was rendered on July 21, 2020, dismissing Mr. Aziz's respondeat superior claim with prejudice. Mr. Aziz

---

[1] The petition also named ABC Insurance Company/Medical Malpractice Insurer as a defendant.

2

sought and was denied writs on this issue from both this court and the supreme court. *Aziz v. Burnell*, 20-428 (La.App. 3 Cir. 11/2/20) (unpublished writ), *writ denied*, 20-1382 (La. 12/5/20), 307 So.3d 199.

Dr. Burnell subsequently moved for summary judgment on the issue of his personal liability, which Mr. Aziz opposed. Following a hearing, the trial court[2] granted summary judgment in favor of Dr. Burnell. A written judgment was rendered in this matter on January 15, 2021. Mr. Aziz has perfected the instant appeal from this judgment.

On appeal, Mr. Aziz assigns two assignments of error:

I.    The trial court erred in granting summary judgment in favor of Dr. Burnell when there is a genuine issue of material fact concerning his personal liability.

II.    The trial court erred in dismissing Dr. Burnell from the lawsuit when his fault is intricately connected to the corporation's fault.

## OPINION

Summary judgment is a procedural device properly used when there is no genuine issue of material fact. *Murphy v. Savannah*, 18-991 (La. 5/8/19), 282 So.3d 1034; La.Code Civ.P. art. 966. Appellate courts review summary judgments *de novo* using the same criteria that governs the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. La. Power & Light*, 06-1181 (La. 3/9/07), 951 So.2d 1058; La.Code Civ.P. art. 966(A)(3).

A material fact is one that "potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Hines*

---

[2] The hearing and all previous matters were heard by Judge James P. Doherty, Jr. However, due to Judge Doherty's subsequent retirement, the matter was transferred to Judge Ledricka Thierry, who rendered the written judgment.

3

*v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (per curiam). "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 8 (La. 7/2/12), 94 So.3d 750, 755.

The mover bears the burden of proof for the motion. La.Code Civ.P. art. 966(D)(1). However, if the mover will not bear the burden of proof at trial, then he need only point out to the trial court "the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* Once this occurs, the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

In order to establish a medical malpractice claim, a plaintiff must prove by a preponderance of the evidence: (1) the standard of care appliable to the medical provider; (2) that the medical provider breached the standard of care; and (3) a causal connection between the breach and the resulting injury. La.R.S. 9:2794(A). The standard of care is that "degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances[.]" La.R.S. 9:2794(A)(1). The standard of care for a physician practicing in a particular specialty is that degree of care ordinarily practiced by physicians within that specialty. *Id.* Expert medical testimony is required to establish the applicable standard of care "'unless the negligence complained of is so obvious that a layperson can infer the negligence without the aid of expert testimony.'" *Dehart v. Jones*, 19-789, p. 6 (La.App. 3 Cir. 12/16/20), 310 So.3d 658,

4

665-66 (quoting *Baez v. Hosp. Serv. Dist. No. 3 of Allen Parish*, 16-951, pp. 5-6 (La.App. 3 Cir. 4/5/17), 216 So.3d 98, 103).

### *Insufficiency of Dr. Eisner's Affidavit*

At the outset, Dr. Burnell argues that the affidavit of Mr. Aziz's medical expert, Dr. Todd Eisner, a Palm Beach, Florida physician, should be disregarded as it fails to establish that he is qualified "as an expert by knowledge, skill, experience, training, or education" to testify regarding the standard of care applicable in this matter. La.Code Evid. art. 702(A). Dr. Burnell argues that Dr. Eisner failed to identify his medical specialty, to attach a copy of his curriculum vitae to his affidavit, and to identify his background and training. He further argues that Dr. Eisner's affidavit is based on an incorrect assumption rather than on actual facts.

However, we need not address this issue as Dr. Burnell failed to object to Dr. Eisner's affidavit in accordance with La.Code Civ.P. art. 966(D)(2). Louisiana Code of Civil Procedure Article 966(D)(2), provides, "The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made." It further provides, "Any objection to a document shall be raised in a timely filed opposition or reply memorandum." *Id.*

This issue was recently addressed in *Thomas v. Dalal*, 20-65, pp. 8-10 (La.App. 3 Cir. 10/28/20), 306 So.3d 507, 512-13 (alterations in original):

> Affidavits submitted in support of or in opposition to summary judgment are governed by La.Code Civ.P. art. 967(A), providing:
>
>> [A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify

5

to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

However, our jurisprudence has stated in the case of experts that "the inadequacy of an affidavit is a 'formal defect,' which is waived by the opponent unless he timely objects to the affidavit." *Thompson v. Ctr. for Pediatric and Adolescent Med., L.L.C.*, 17-1088, p. 6 (La.App. 1 Cir. 3/15/18), 244 So.3d 441, 446, *writ denied*, 18-583 (La. 6/1/18), 243 So.3d 1062. Pursuant to La.Code Civ.P. art. 966(D)(2), "if an expert's affidavit contains opinions that lack an adequate factual basis, are not sufficiently reliable, or are otherwise inadmissible under [La.Code Evid.] Article 702 and [La.Code Civ.P. art.] 967A, the opposing party must object to the affidavit." *Thompson*, 244 So.3d at 446. "[T]he reasoning or methodology underlying an expert's opinion are relevant only to determine whether the opinions are *admissible* under [La.Code Civ.P.] Articles 967A and [La.Code Evid.] Article 702." *Id.* at 447. If the opposing party fails to object, the trial court must consider the expert's opinions. *Id.* "At that point, in determining whether the evidence creates a genuine issue of material fact, the trial court cannot make credibility determinations, evaluate testimony, or otherwise weigh the evidence. The trial court must assume all affiants are credible." *Bass v. Disa Glob. Sols., Inc.*, 19-1145, p. 10 (La.App. 1 Cir. 6/12/20), 305 So.3d 903.

In *Thompson v. Center for Pediatric and Adolescent Medicine, L.L.C.*, 17-1088 (La.App. 1 Cir. 3/15/18), 244 So.3d 441, *writ denied*, 18-583 (La. 6/1/18), 243 So.3d 1062, the defendant initially objected to the affidavit by the plaintiffs' medical expert but then waived all of his objections except with regard to the sufficiency of the affidavit. Thus, the trial court admitted the affidavit into evidence. On appeal, the defendant argued that the expert's opinions were conclusory; thus, they failed to create a genuine issue of material fact. In rejecting this argument, the court stated:

This contention fails to recognize that, in a motion for summary judgment, the reasoning or methodology underlying an expert's opinion are relevant only to determine whether the opinions are admissible under [La.Code Civ.P. art.] 967A and [La.Code Evid. art.] 702. *See Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*], 509 U.S. [579,] 592-93, 113 S.Ct. [2786,] 2796; *Freeman* [*v. Fon's Pest Management, Inc.*, 17-1846 (La. 2/9/18)], 235 So.3d [1087,] at 1090 . . .; *Independent Fire Insurance Company*, 755 So.2d at 235. Under [La.Code Civ.P. art.] 966D(2), that threshold determination is made

6

when deciding the merits of an objection to the affidavit. As previously explained, if the affidavit passes that threshold test and is admitted, the trial court is statutorily obligated to consider the expert's opinions but, at that point, cannot evaluate the credibility or weight of that evidence. *See* La. Code Civ. Pro. art. 966D(2); *Smith* [*v. Our Lady of the Lake Hospital, Inc.*, 93-2512 (La. 7/5/94)], 639 So.2d [730,] 751; *Janney* [*v. Pearce*, 09-2103 (La. App. 1 Cir. 5/7/10)], 40 So.3d [285,] 289.

Here, the trial court admitted Dr. Chabon's affidavit into evidence. Gaudin, after seemingly waiving the objection, did not seek review of the trial court's ruling by filing an answer to this appeal or seeking a supervisory writ. Consequently, the admissibility of the affidavit, and more specifically whether the opinions therein are adequately supported to meet the requirements of [La.Code Evid. art.] 702 and [La.Code Civ.P. art.] 967A, is not before this court. The affidavit is in evidence and must be considered. *See* La. Code Civ. Pro. art. 966D(2).

*Id.* at 447-48 (footnote omitted).

Dr. Burnell raised no objection to Dr. Eisner's affidavit prior to the motion for summary judgment. "Under current law, if an expert's affidavit is not excluded pursuant to an objection, the trial court is statutorily obligated to consider the opinions therein[.]" *Id.* at 448. Accordingly, Dr. Eisner's affidavit will be considered in our *de novo* review of the record.

### *Assignment of Error Number One*

In his first assignment of error, Mr. Aziz argues the trial court erred in granting Dr. Burnell's motion for summary judgment on the issue of his personal liability. We agree.

In his motion, Dr. Burnell argued that Mr. Aziz would be unable to prove his medical malpractice claim at trial because of a lack of evidence establishing that he knew Mr. Aziz called his office in regards to his post-procedure complications. He further argued that Mr. Aziz had presented no expert medical testimony or opinion establishing a breach of the applicable standard of care. Dr. Burnell submitted five exhibits in support of his motion: the September 13, 2019 consent judgment dismissing four of Mr. Aziz's five allegations of negligence; the July 21, 2020

7

judgment dismissing Mr. Aziz's respondeat superior claim; and excerpts from the depositions by Mr. Aziz, Dr. Burnell, and Joanie Hargroder Stelly, Dr. Burnell's former nurse.

Mr. Aziz testified that he called Dr. Burnell's office several times following his colonoscopy but that Dr. Burnell never returned his calls. He admitted that he never spoke to Dr. Burnell during his calls. Dr. Burnell testified that he was unaware of Mr. Aziz's calls, but he stated that had Mr. Aziz called, his calls would have been given priority because complications arising from a colonoscopy can lead to an infection requiring hospitalization and, possibly, surgery. While Ms. Stelly did not know whether Mr. Aziz called and left a message, she stated that if he called, it was possible that his message was never relayed to Dr. Burnell. She claimed that the facility where the colonoscopy was performed was responsible for following up with Mr. Aziz after his procedure.

Based on this evidence, we find that Dr. Burnell has pointed out a lack of factual support for Mr. Aziz's claim that he (Dr. Burnell) knew about the calls and that he failed to communicate with Mr. Aziz regarding his complications. Accordingly, we find Dr. Burnell has carried his burden of proof, and the burden now shifts to Mr. Aziz to establish either the existence of a genuine issue of material fact or that Dr. Burnell is not entitled to judgment as a matter of law. La.Code Civ.P. art. 966(D)(1).

In his opposition, Mr. Aziz introduced excerpts from depositions by Dr. Burnell, Ms. Stelly, Megan Sanchez, and Ellie Leger, as well as Dr. Eisner's affidavit.

Dr. Burnell stated that patients were "instructed to call for any pain, bleeding, or fever" they experienced following their procedures. He stated that he was not aware of Mr. Aziz's complaints of abdominal pain and bleeding or that Mr. Aziz had attempted to contact him. When asked about his office policy with regard to contact

8

from patients suffering from complications, Dr. Burnell stated, "If there would have been a phone call, it would have been [sic] taken precedence. They know, I mean, it's not a call about anything else. Hey, this is Mr. Aziz, I had a scope yesterday, and I'm having problems with pain and bleeding. That goes straight to the top." He explained that the policy was in place because complications can lead to infections, which in turn could require patients to undergo hospitalization and even surgery. He agreed that with regard to post-colonoscopy complications, time is a factor. Dr. Burnell stated that if Mr. Aziz had called his office, he would have learned about the call when his nurse walked up to him in the office and handed him a piece of paper with information about the call.

Ms. Stelly testified that she was never instructed by Dr. Burnell to call and check on his patients following their procedures. She stated that it was up to the patient to call in the event they began suffering complications. However, she admitted that she would only be aware of a patient's call if the message was forwarded to her.

Ms. Sanchez, a former receptionist, testified that documentation was important in Dr. Burnell's office. She stated that every call to the office was answered either by her or someone else in the office. Ms. Sanchez stated that ordinarily messages were typed into a computer system contemporaneously with the call. However, she stated sometimes she would write messages down if she was unable to type them into the system. In that instance, she said that she would enter the message into the system at her first opportunity. She said messages were forwarded to the nurses after they were entered into the system. Ms. Sanchez said that the nurses received messages no matter whether they were entered into the system or written down. However, she admitted, "If it wasn't in the computer, if it wasn't sent, it wasn't done."

9

Ms. Leger, another former receptionist, testified that Dr. Burnell's office used the APRIMA computer system, and she was trained to enter all incoming messages into this system, which would then forward the messages to the nurses. She agreed that sometimes written messages were dropped. She stated, "It could be, I don't know. I mean, I tried to send all my messages out. I always wrote them down and put them as they, you know, when I'd get a chance. I'd put them down and upload them for the nurses." When asked, "So that if you looked in someone's computer file and you didn't see a message, that was no indicator necessarily that that person hadn't called? It is possible that a message was dropped?[,]" Ms. Leger answered, "It could have been, yeah."

Dr. Eisner stated that at issue was "whether Dr. Burnell and or his staff timely responded to Mr. Aziz's multiple phone calls, complaining of abdominal pain the day after the colonoscopy and whether the lack of response adversely affected Mr. Aziz's ability to reduce complication [sic] to his colon." After reviewing "all of the pertinent and relevant medical records[,]" Dr. Eisner stated that his opinion did not differ from that rendered by the medical review panel. He further stated:

> However, as it relates to allegation #5 for Failure to communicate (return call) with Mr. Aziz's post procedure I am able to offer my medical opinion as to the Standard of Care required post colonoscopy once complications arise.
>
> It is my opinion Mr. Aziz's medical condition deteriorated over the course of the two to three days before he was admitted for Emergency care to repair his colon. The damage could have been minimized had there not been a delay in the diagnosis and treatment of the perforation, at the on-set of the complaint by [Mr.] Aziz.
>
> Mr. Aziz states he called Dr. Burnell's office one day after his procedure and again the following day to report his complications. He did not receive a return phone call to address the complaint. If Dr. Burnell and or his staff had not failed to communicate with Mr. Aziz to advise him of what steps to take it is highly likely he would not have suffered the harm which resulted from the delay in treatment of the perforation of his colon. It is my opinion the delay in receiving medical treatment caused Mr. Aziz to suffer an avoidable and now permanent

10

condition. If this delay in treatment is related to Dr. Burnell and his staff's failure to communicate, it is my opinion Dr. Burnell breach [sic] the Standard Care [sic] owned [sic] to Mr. Aziz Post Colonoscopy Procedure.

After reviewing this evidence, we find Mr. Aziz has produced factual support sufficient to establish the existence of a genuine issue of material fact. First, we point out that nothing in the record indicates the type of medicine practiced by Dr. Burnell, and thus, we cannot tell whether he was practicing under the community/locale standard of care or the specialty standard of care when treating Mr. Aziz. La.R.S. 9:2794(A)(1). We note that colonoscopies are not the exclusive provenance of gastroenterologists.

Mr. Aziz, in his petitions, referred to Dr. Burnell as a "physician duly licensed and authorized to practice medicine in this State and certified as a qualified health care provider[.]" In his answer, Dr. Burnell simply responded that he was a qualified health care provider at all relevant times and, as such, was entitled to all of the rights and privileges provided by the Louisiana Medical Malpractice Act. Throughout the record Dr. Burnell was identified only as a "qualified health care provider."[3]

In both his appellate and opposition brief, Mr. Aziz quoted language from *Bianchi v. Kufoy*, 10-607 (La.App. 3 Cir. 12/8/10), 53 So.3d 530, pertaining to the medical specialty standard of care, but then later argued that Dr. Burnell was bound by the medical community standard of care. Dr. Eisner, in his affidavit, stated that his opinion pertained to the "malpractice for perforation of Mr. Aziz's colon by Dr. Burnell, GP."

---

[3] Dr. Burnell, in a prior hearing, introduced evidence pertaining to the medical review panel process and his certificate of enrollment in the Patient's Compensation Fund. Although the medical review panel's reasons for opinion found that Dr. Burnell deviated "from the standard of care which is required of health care providers, their staff and/or employees of the same specialty[,]" it never identified the applicable specialty. However, the certificate of enrollment states that Dr. Burnell's specialty was "Gastroenterology-Major Surgery."

11

Despite this failure, we find that Mr. Aziz established the standard of care applicable to a physician's follow-up care for post-colonoscopy complications through Dr. Burnell's testimony as well as Dr. Eisner's affidavit. Dr. Burnell testified that a call from a patient experiencing complications is accorded priority in his office because of the risk that the patient could develop an infection requiring hospitalization and/or surgical intervention. He admitted that time is a factor in these situations. Although Dr. Eisner never specifically enunciated the applicable standard of care, he opined that Mr. Aziz's delay in receiving medical treatment caused him "to suffer an avoidable and now permanent condition. If this delay in treatment is related to Dr. Burnell and his staff's failure to communicate, it is my opinion Dr. Burnell breach [sic] the Standard Care [sic] owed to Mr. Aziz Post Colonoscopy Procedure." Therefore, we find that the standard of care regarding post-colonoscopy communications requires a physician to respond promptly to a patient's complication complaints in order to minimize the risk of infection and the need for hospitalization or surgical intervention. Accordingly, we find that Mr. Aziz established the standard of care applicable in this instance.

While he admitted that he never spoke to Dr. Burnell, Mr. Aziz testified that he called several times and left messages for him but that Dr. Burnell never returned his call. As stated, Dr. Burnell testified that patients were instructed to contact him regarding complications. However, he admitted that he never answered these calls, and he only learned about the calls when informed by his nurse. This presents conflicting evidence, which raises a genuine issue of material fact. Mr. Aziz did as instructed and called Dr. Burnell's office, whereas Dr. Burnell stated that he neither spoke to nor was aware of Mr. Aziz's calls. The record contains further evidence that it was Dr. Burnell's policy that calls related to complications were accorded top priority. However, the evidence also revealed that messages written down rather

12

than entered into the system could be dropped, and if dropped, they were never forwarded to the nurse.

With regard to cause-in-fact, Dr. Eisner opined that Mr. Aziz's delay in seeking treatment was caused by Dr. Burnell's failure to return his calls, during which time his condition deteriorated, and he eventually suffered "an avoidable and now permanent condition." Dr. Eisner further stated that "[i]f this delay in treatment is related to Dr. Burnell and his staff's failure to communicate, it is my opinion that Dr. Burnell breach[ed] the Standard [of] Care [owed] to Mr. Aziz Post Colonoscopy Procedure."

Based on the foregoing, we find that Mr. Aziz satisfied his burden of producing factual support sufficient to establish the existence of a genuine issue of material fact. We find that Dr. Eisner's affidavit is sufficient to allow a reasonable juror to find that Dr. Burnell breached the applicable standard of care and that the damages sustained by Mr. Aziz resulted from that breach. Dr. Eisner's affidavit set out the underlying facts, and, although he did not enunciate the standard of care, he opined that Dr. Burnell and his staff breached the standard of care by failing to promptly communicate with Mr. Aziz. He further opined that Mr. Aziz's damages resulted from Dr. Burnell's delay in communicating with him. Accordingly, the judgment of the trial court in favor of Dr. Burnell is reversed, and the matter is remanded to the trial court for further proceedings.

Our opinion here that there are genuine issues of material fact as to the conduct of Dr. Burnell, while acting on behalf of the Corporation, is not inconsistent with the previous writ denials by this court and the supreme court on the issue of Dr. Burnell's vicarious liability for the actions of the Corporation's staff under the doctrine of respondeat superior. Pursuant to La.R.S. 12:902, a natural person, licensed to practice medicine in this state, may form a professional medical corporation for the

13

purpose of practicing medicine. "Only natural persons duly licensed to practice medicine . . . in this state may render medical services on behalf of a professional medical corporation." La.R.S.12:911(B).

There is no dispute that Dr. Burnell engaged in the practice of medicine under the veil or umbrella of a professional medical corporation. Accordingly, pursuant to La.R.S. 12:907(A), (B), Dr. Burnell is not personally liable for any debt or liability of the Corporation. However, La.R.S. 12:907(C) further provides:

> Nothing in this Chapter shall be construed as in derogation of any rights which any person may by law have against an incorporator, subscriber, shareholder, director, officer or agent of the corporation, because of any fraud practiced upon him, or because of any breach of professional duty or other negligent or wrongful act, by such person, or in derogation of any right which the corporation may have against any of such persons because of any fraud practiced upon it by him.

Thus, it is Dr. Burnell's individual actions and his actions in directing the Corporation's staff that are relevant for determining the ultimate responsibility of the Corporation.

### Assignment of Error Number Two

In his second assignment of error, Mr. Aziz argues the trial court erred in dismissing his claims against Dr. Burnell because his fault was intricately connected with that of the Corporation. He argues that even if dismissed, a jury would still have to determine Dr. Burnell's degree of fault in a trial against the Corporation. He argues that a jury would only be confused by the evidence introduced at trial against the Corporation due to the intertwined nature of Dr. Burnell's liability with that of the Corporation. Thus, he argues that the trial court's dismissal of his claims against Dr. Burnell was premature and inappropriate.

Based on our reversal of the trial court's judgment, we need not address this issue. Nevertheless, Mr. Aziz further argues that we should review the trial court's

14

July 21, 2020 judgment dismissing his claim against Dr. Burnell on the issue of respondeat superior.

Mr. Aziz argues that the July 21, 2020 judgment was interlocutory in nature; thus, we should review that judgment as part of the present unrestricted appeal. *Langston v. Fazal-Ur-Rehman*, 19-267 (La.App. 3 Cir. 11/27/19), 286 So.3d 483. While we agree that the judgment was an interlocutory judgment that could be reviewed as part of the present appeal, we pretermit any discussion of this issue because other than stating that we should review the judgment, Mr. Aziz failed to brief this issue. Pursuant to Uniform Rules—Courts of Appeal, Rule 2-12.4, issues not briefed on appeal are deemed abandoned. Accordingly, we deem this issue abandoned.

## DECREE

For the foregoing reasons, the judgment of the trial court in favor of Dr. Michael L. Burnell is reversed, and the matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed to Dr. Michael L. Burnell.

**REVERSED AND REMANDED.**