MAX N. TOBIAS, JR., Judge.
 

 |,The plaintiffs, Janice Miller and Victor Brooks, individually and on behalf of their minor son, Victor Miller (“Victor”), appeal an adverse judgment dismissing their medical malpractice claim against the defendant, Tulane University Health Care Systems, LC d/b/a Tulane University Hospital and Clinic (“Tulane Hospital”), on a motion for summary judgment. For the reasons that follow, we affirm.
 

 The plaintiffs’ minor son, Victor, born on 17 May 1987, was admitted to Tulane Hospital on 18 January 1999 for complaints of frontal headaches, nausea, vomiting, and dizziness. Victor was placed on diuretics in an effort to decrease cerebral swelling, but to no avail. The headaches persisted. Several days following his admission, Victor underwent a craniofacial reconstruction performed by Drs. John W. Walsh, David A. Jansen, and Sandea Grenne. Two days later, while still hospitalized and recovering from the surgery, Victor attempted to go to the bathroom on his own. He became dizzy and fell, striking his head. Despite the fall and continued complaints of headaches, Victor was discharged from Tulane Hospital two days later. Subsequently, Victor has been hospitalized on numerous occasions and undergone multiple procedures. According to the | ¡¡plaintiffs, he continues to suffer from headaches, lethargy, dizziness, awkward gait, memory deficits, loss of cognitive abilities, and a “misshaped head.”
 

 In 2000, the plaintiffs filed a “Petition to Empanel Medical Review Panel” with the Louisiana Patient’s Compensation Fund naming Tulane Hospital and Drs. Walsh, Jansen and Grenne as defendants, claiming that Victor’s fall and ongoing medical problems were occasioned by their negligence in rendering medical treatment, which fell below the standard of care. According to the plaintiffs, the defendants’ negligence caused personal injuries to Victor and a loss of consortium to them.
 

 A medical review panel convened on 27 February 2004, and thereafter issued a unanimous opinion in favor of the individual defendants on the basis that the evidence did not support the conclusion that the defendants failed to comply with the applicable standard of care. Regarding Tulane Hospital, the panel reasoned the following:
 

 1. Perioperative monitoring, evaluation, and care was within the appropriate standard of care and appropriately documented in the record.
 

 2. Medical records indicate safety checks were done on a regular basis the day of the alleged fall.
 

 3. Review of multiple CT scan reports does not indicate evidence of a skull fracture or broken cranial plates.
 

 The plaintiffs then filed suit in the district court against Tulane Hospital and the three physicians alleging that their breach of the standard of care caused Victor to
 
 *1144
 
 fall and sustain damage. As to Tulane Hospital, the plaintiffs alleged that Tulane failed to: (1) provide for Victor’s safety by instituting measures to protect him from falls; (2) provide adequate and properly trained staff to carry out appropriate safety measures; (3) adequately supervise and monitor Victor’s | .¡condition; (4) give the proper type and dose of medications; and, (5) properly and/or adequately instruct and warn either Victor or his family regarding ambulation.
 

 Tulane Hospital filed a motion for summary judgment on 18 May 2009 — over ten years from Victor’s discharge from the hospital and over five years after the institution of this suit — asserting that the plaintiffs would not be able to meet their burden of presenting expert medical testimony to establish that Tulane Hospital’s alleged breach of the standard of care caused Victor to suffer injuries he would not have otherwise incurred.
 
 [1]
 
 The evidence presented on the motion for summary judgment established that Victor suffers from a congenital condition known as hydrocephalus,
 
 [2]
 
 which is an increase of inter-cranial pressure due to an accumulation of cerebrospinal fluid (CSF) within the brain that is present at birth.
 
 Bailey v. Khoury,
 
 04-0620, p. 6 (La.1/20/05), 891 So.2d 1268, 1273.
 
 [3]
 
 In support of its motion, Tulane Hospital attached the opinion of the medical review panel, and an affidavit of Dr. Bryan R. Payne, one of the physicians who sat on the panel, which opined that there was no evidence of any deviation of the applicable standard of care on the part of Tulane Hospital. Additionally, the affidavit of Dr. Payne opined that the conduct of Tulane Hospital did not cause the damages |4claimed by the plaintiffs by stating that “[i]t is my opinion that plaintiffs’ complaints are in no way related to the care and treatment provided by Tulane University Hospital and Clinic.”
 

 In opposition to Tulane Hospital’s motion, the plaintiffs submitted the affidavits of the plaintiffs, and an affidavit of a registered nurse, Margaret Blansett, to the effect that Tulane University failed to comply with the applicable standard of care. Despite having listed four physicians in their responses to discovery as possible expert witnesses, the plaintiffs did not file an affidavit by any one of them in opposition to Tulane Hospital’s motion. Additionally, the plaintiffs argued that no deposition or affidavit testimony to establish causation was necessary because they were entitled to a presumption of causation as set forth by the Louisiana Supreme Court in
 
 Housley v. Cerise,
 
 579 So.2d 973 (La.1991). In
 
 Housley,
 
 the Court stated that a plaintiff in a negligence action is
 
 *1145
 
 entitled to a presumption of causation if the following three elements are met: (1) the person was in good health prior to the accident; (2) commencing with the accident, the symptoms of the disabling condition appeared and continuously manifested themselves afterwards; and (3) there is a reasonable possibility of a causal connection between the accident and the disabling condition.
 
 Housley,
 
 579 So.2d at 980.
 
 [4]
 

 Following a hearing on the motion, the trial court ruled in favor of Tulane Hospital and dismissed the plaintiffs’ claims. Specifically, the court determined that the plaintiffs failed to offer any evidence, by affidavit or otherwise, establishing that Victor’s post-fall headaches were actually caused by the fall and 1 snot an incidence of his congenital hydrocephalic condition. Because Victor had been complaining of headaches both before and after his fall in the hospital, the trial court ruled that the plaintiffs were not entitled to the
 
 Housley
 
 presumption of causation and, thus, expert medical testimony to establish medical causation was necessary. The trial court determined that Nurse Blansett’s affidavit was insufficient to prove the requisite causal link. Accordingly, the trial court entered judgment in favor of Tulane Hospital dismissing the plaintiffs’ claims with prejudice.
 

 On appeal, the plaintiffs contend the trial court erred in granting Tulane Hospital’s motion for summary judgment. We review a grant of summary judgment
 
 de novo,
 
 applying the same criteria applied by trial courts to determine if summary judgment is appropriate.
 
 Dean v. State Farm Mut. Auto. Ins. Co.,
 
 07-0645, p. 4 (La.App. 4 Cir. 1/16/08), 975 So.2d 126, 130.
 

 A plaintiff in a medical malpractice action against a hospital has the burden of showing that the hospital personnel negligently departed from the recognized standard of care afforded by hospitals in the area for the particular malady involved.
 
 Dean v. Ochsner Medical Foundation Hospital,
 
 99-466, p. 5 (La.App. 5 Cir. 11/10/99) 749 So.2d 36, 39. In this case, to establish a claim for medical malpractice, the plaintiffs must prove that Tulane Hospital breached the applicable standard of care and that this breach proximately caused Victor to suffer injuries that he otherwise would not have incurred. La. R.S. 9:2794.
 
 See Webb v. Tulane Medical Center Hospital,
 
 96-2092, p. 5 (La.App. 4 Cir. 10/1/97), 700 So.2d 1141, 1144. Expert testimony is required to establish the standard of care and whether that standard was breached, unless the negligence complained of was so obvious that a layperson can infer negligence without the guidance of expert testimony, | flsueh as fracturing a leg during an examination, amputating the wrong limb, or leaving a sponge in a patient’s body.
 
 Pfiffner v. Correa,
 
 94-0992, 94-0963, 94-0924, p. 9 (La.10/17/94), 643 So.2d 1228, 1233. The plaintiffs posit that pursuant to
 
 Pfiffner,
 
 negligence and a breach of the applicable standard of care can be inferred even by lay persons and, thus, expert guidance is not needed in this case because “it is clear and obvious to any reasonable person that falling and striking your head is detrimental to a post brain surgery patient,” when subsequent to his cranial-facial reconstruction surgery, Victor had been making a good recovery until his fall, after which he began to experience headaches. We disagree.
 

 In
 
 Webb, supra,
 
 the mother of a sickle cell anemia patient sued the hospital and physician when her son died following cardiopulmonary arrest brought on by aspiration vomitus while hospitalized. This court determined the hospital was not liable for the patient’s death based on nursing negli-
 
 *1146
 
 genee for failure to provide more frequent patient monitoring as the plaintiff failed to present expert evidence that a lack of adequate monitoring caused the patient’s death. The trial court inferred a causal connection reasoning that “common sense tells us that one who is coughing up sputum will likely ingest significant quantities” and thus greater observation was warranted. However, in the absence of supporting evidence, this court determined that such common sense reasoning cannot be extended to satisfy the plaintiffs evi-dentiary burden of proving that inadequate observation caused or contributed to the patient’s cardiopulmonary arrest. We held that “[c]ommon sense alone cannot tell the lay person what would have been the consequences of more frequent monitoring, and the record contains to no evidence which suggests that could have been done it a nurse had been seated at his bedside prior to the arrest.”
 
 Webb,
 
 pp. 8-9, 700 So.2d at 1145. In short, we held that the trial judge’s 17inference of causation was not supported by the evidence and that the complex medical issues presented went beyond the province of a lay person.
 
 Id.
 

 We find that the instant case does not involve an act of obvious negligence on the part of Tulane Hospital the likes of which
 
 Pfiffner
 
 addresses and that causation cannot be inferred under the circumstances. Victor’s medical history is complex and he had a longstanding history of ongoing headaches and shunt revisions prior to his fall. Additionally, the alleged lethargy, dizziness, awkward gait, memory deficits, loss of cognitive abilities, and a misshaped head, which the plaintiffs contend were caused by his fall, are also all known sequela of one who suffers from hydrocephalus. Similar to the circumstances presented in
 
 Webb,
 
 the record before us demonstrates the medical issues presented by this case are complex and not likely within the province of lay persons to assess. The imposition of liability involves a determination of whether or not any purported breach of the standard of care by Tulane Hospital
 
 caused
 
 the various medical problems experienced by Victor after his fall.
 
 [5]
 
 See Webb at p. 7, 700 So.2d at 1144.
 

 Regarding causation, the plaintiffs contend that under the circumstances presented by this case, they are entitled to the
 
 Housley
 
 presumption. We disagree. Even though the plaintiffs correctly aver that pursuant to
 
 Housley
 
 they are only required to show a reasonable possibility versus a probability that the fall caused Victor’s post-surgery headaches and other alleged maladies, it is Victor’s pre-surgical condition that prevents the application of the presumption of causation in [ 8this case. In
 
 Housley,
 
 the plaintiff, who was six months pregnant when she slipped and fell in a rented townhouse, filed suit alleging the fall caused the premature birth of her child.
 
 Housley,
 
 579 So.2d at 974. The trial court rendered judgment in favor of the plaintiff, and this court reversed citing the lack of sufficient testimony to establish causation. The Supreme Court disagreed. Based on the evidence submitted showing the plaintiffs condition prior to the accident (which was normal with no complications to her pregnancy noted), and her condition immediately after the accident (a premature rupture of her water bag, which her physician opined was caused by the fall, resulted in an emergency procedure to induce labor four days later), the Supreme Court determined that the evidence established a “temporal link” between the fall
 
 *1147
 
 and the rupture of the plaintiffs water bag.
 
 Id.
 
 at 979-80.
 

 We find
 
 Housley
 
 to be factually inap-posite to the instant case. As noted above, the first requirement under
 
 Hous-ley
 
 is a showing that the plaintiff was in good health prior to the incident. Based upon our review of the record before us, the plaintiffs have failed to establish this element in the case
 
 sub judice.
 
 It is indisputable that, prior to his fall, Victor suffered from the very condition that plaintiffs are now alleging was actually caused by his fall in the hospital — ongoing headaches. The evidence reveals that it was a headache for which Victor sought emergency medical treatment resulting in his admission to Tulane Hospital, which eventually culminated in his fall in the bathroom. The plaintiffs’ inability to establish even the first element required under
 
 Housley
 
 is fatal to their reliance on its presumption to prove medical causation.
 

 We find the plaintiffs’ reliance on
 
 Pfiff-ner
 
 and
 
 Housley
 
 presumptions of negligence and causation to be misplaced. The trial judge correctly determined 19that these presumptions are not available to the plaintiffs under the circumstances presented by this ease.
 

 Because the plaintiffs are not afforded the
 
 Pfiffner
 
 and
 
 Housley
 
 presumptions to establish negligence and medical causation, the law requires the plaintiffs to provide expert testimony to prove that Tulane’s alleged breach of the standard of care resulted in Victor’s fall and his subsequent injuries. In this regard, the only expert testimony the plaintiffs have provided is the affidavit of Nurse Blansett. Even if we were to find that Nurse Blan-sett’s affidavit, reproduced verbatim below, is sufficient to set forth the applicable standard of care owed by Tulane Hospital in this matter and that Tulane Hospital breached the applicable standard in this case, we find the affidavit devoid of any opinion that Victor’s subsequent complaints, including headaches, were
 
 caused
 
 by Tulane Hospital’s alleged breach of that standard of care:
 

 I, MARGARET BLANSETT, RN state that in my opinion that if the Bed-rails were left down on Victor Millers bed as stated in his affidavit, by the Nursing Staff at Tulane University, that this would be below the standard of care for the nursing staff which contributed to Victor Miller falling on or about January 25,1999.
 

 Victor Miller stated in an affidavit that he had to go to the Bathroom Again pushing the call bell on several occasions and verbally called out to the Nursing Staff for approximately 30 minutes. It is below the standard of care for the Nursing Staff to fail to answer the call bell and assist Victor Miller accordingly which again contributed to Victor Miller getting out of bed without assistance and falling.
 

 Furthermore, it is below the standard of care for the Nursing Staff to fail to educate Janice Miller and Victor Brooks (According to their affidavits) that Victor Miller was at high risk for falls and should not be left alone and should not get up without assistance and the need for continued assistance with any and all ambulation to prevent falls.
 

 |10We find Nurse Blansett’s affidavit is insufficient for purposes of establishing the requisite medical causation in this case. The affidavit merely contains conclusory statements regarding her opinion that Tulane Hospital breached the standard of care without establishing the necessary “temporal link” between the alleged malpractice of Tulane Hospital and the injuries allegedly suffered by Victor. Specifically, while Victor continued to experience headaches and other maladies following
 
 *1148
 
 the fall, the affidavit of Nurse Blansett fails to show that these subsequent headaches and maladies were actually
 
 caused
 
 by the fall and not merely a natural consequence of his pre-fall hydrocephalic condition, which is known to cause each of the complications about which Victor complains,
 
 ie.,
 
 headaches, lethargy, dizziness, awkward gait, memory deficits, loss of cognitive abilities, and a misshaped head. The affidavit provides no indication that Nurse Blansett even considered Victor’s lengthy pre-fall medical history.
 

 Because a resolution of the issue of causation in this matter requires knowledge of hydrocephalus, especially regarding the consequences and sequela of the congenital disease, and whether or not Victor would have continued to require shunt revisions and experience headaches and the other alleged maladies even without the fall, we conclude the trial judge was correct in finding that expert medical testimony is needed to decide the issue of causation and that Nurse Blansett’s affidavit fell short of doing so. Therefore, after a
 
 de novo
 
 review of the record, we find that the plaintiffs have failed to produce factual support sufficient to establish that they will be able to satisfy their burden of proof at trial. Accordingly, we find no error in the summary judgment rendered by the trial judge.
 

 InCONCLUSION
 

 For the foregoing reasons, we find summary judgment was properly rendered and thus affirm.
 

 AFFIRMED.
 

 [1]
 

 . Defendants Walsh, Jansen and Grenne also filed a motion for summary judgment, which was set for hearing. The plaintiffs neither opposed the motion nor appeared at the hearing. The trial judged, therefore, ruled in favor of the three physicians and issued judgment dismissing the plaintiffs' claims against them with prejudice. The plaintiffs did not appeal that judgment.
 

 [2]
 

 . Hydrocephalus means "water on the brain.”
 
 Sanders v. International Indem. Co.,
 
 97-106, p. 2 (La.App. 3 Cir. 2/4/98), 708 So.2d 772, 774.
 

 [3]
 

 . The excess fluid can increase pressure in the brain, possibly resulting in brain damage and loss of mental and physical abilities. "Congenital hydrocephalus,”
 
 WebMD Health,
 
 at
 
 http://my.web.md.com/hw/raising-CL-fo-mily/ hwl98129.asp.
 
 Known associated complications of hydrocephalus in older children include: headaches, lack of energy, sleepiness, dizziness, blurred or double vision, problems with gait, memory loss, slowing or repression of development, and impaired performance in school. “Hydrocephalus: Symptoms,”
 
 Mayo-Clinic.com
 
 at
 
 http://www.mayclinic.eom/h ealth/hydrocephalus/DS00393/DSECTION=symptoms;
 
 "Hydrocephalus,” University of Missouri, Health Care at
 
 http://classic. muhealthh.org/neuromed/hydrocephalus.shtml.
 

 [4]
 

 . This is often referred to as the
 
 Housley
 
 presumption.
 

 [5]
 

 . The mere fact that an injury occurred does not raise a presumption that the hospital was negligent or of causation.
 
 Elkins v. Key,
 
 29,-977, p. 8 (La.App. 2 Cir. 10/29/97), 702 So.2d 57, 62.