# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-540


JOAN MARIE POLLOCK

VERSUS

MDA CONSULTANTS, L.L.C., ET AL.



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20214247
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## CANDYCE G. PERRET
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Sharon Darville Wilson, Judges.


**AFFIRMED.**

**Tonya R. Smith**
**Tonya R. Smith, L.L.C.**
**200 Travis Street, Suite 166**
**Lafayette, LA  70503**
**(337) 504-7765**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Joan Marie Pollock**

**Adam P. Gulotta**
**Judice & Adley**
**Post Office Drawer 51769**
**Lafayette,  LA  70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Dr. Maximo B. Lamarche**
    **Dr. Stuart A. Begnaud**
    **MDA Consultants, L.L.C.**
    **LAMMICO**

**Julie Savoy**
**Michael A. Dalman**
**Gachassin Law Firm**
**Post Office Box 80369**
**Lafayette, LA  70598-0369**
**(337) 235-4576**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Dr. James D. Hlavacek, III**
    **Dr. Blaine T. Walton**
    **Nurse Practitioner Matthew Blanchard**
    **Lafayette General Orthopaedic Hospital**
    **Ochsner Lafayette General Orthopaedic Hospital**
    **Lafayette General Health Systems, Inc.**
    **Lafayette General Medical Center, Inc., d/b/a Ochsner Lafayette**
        **General Medical Center, Inc.**

**PERRET, Judge.**

In this medical malpractice action, Plaintiff, Joan Marie Pollock ("Plaintiff"), appeals the trial court's June 23, 2022 judgment that granted summary judgment in favor of Defendants, Dr. James D. Hlavacek, III, Dr. Blaine T. Walton, Dr. Maximo B. Lamarche, Dr. Stuart A. Begnaud, Nurse Practitioner Matthew Blanchard, Lafayette General Medical Center, Inc. d/b/a Ochsner Lafayette General Medical Center, Ochsner Lafayette General Orthopaedic Hospital, Lafayette General Orthopaedic Hospital, Lafayette General Health System, Inc., MDA Consultants, L.L.C., and LAMMICO (hereinafter collectively referred to as "Defendants"), and sustained Defendants' objections to Plaintiff's Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 13, 14, and 15. For the following reasons, we affirm.

### PROCEDURAL HISTORY AND FACTS:

On May 9, 2018, Plaintiff fell and injured her right ankle and foot while walking in her yard. Plaintiff went to the emergency room at Ochsner Lafayette General Medical Center ("Ochsner Lafayette General") where she received X-rays identifying fractures in her ankle.[1] Ochsner Lafayette General referred Plaintiff to Dr. Hlavacek, who saw Plaintiff the next day and recommended surgery, to which Plaintiff agreed. The surgery was performed by Dr. Hlavacek on May 11, 2018, at Ochsner Lafayette General, and Plaintiff remained hospitalized until May 16, 2018, during which time she was cared for by Dr. Hlavacek, Dr. Walton, and Nurse Practitioner Blanchard.

Plaintiff was then transferred to Acadiana Rehabilitation for therapy and was treated by Dr. Lamarche and Dr. Begnaud until May 23, 2018, when she was discharged to her home. Plaintiff's discharge summary dated May 23, 2018,

---

[1] Specifically, Plaintiff's preoperative/postoperative diagnoses was: (1) a closed right trimalleolar ankle fracture; and (2) a syndesmotic disruption of the right ankle.

stated, in pertinent part: "At discharge, both of the incisions were noted. Sutures were intact. Some redness and bruising was noted with no signs or symptoms of infection."

In the weeks following her discharge, Plaintiff complained of foot pain and developed a superficial infection at her surgical incision, for which she was readmitted to Ochsner Lafayette General from June 8 through June 12, 2018. During that time, the on-call orthopedist performed an incision and drainage while Dr. Hlavacek consulted with Dr. Vitalis Okechukwu, an infectious disease physician, and ordered antibiotics for the infection. Plaintiff continued to receive treatment with Dr. Okechukwu for her Methicillin resistant Staphylococcus aureus ("MRSA") infection throughout July and August of 2018. On August 24, 2018, Dr. Hlavacek removed some of the stabilizing hardware he had placed in Plaintiff's ankle to address her ongoing pain complaints. Plaintiff continued physical therapy through October 8, 2018, and had periodic office visits with Dr. Hlavacek and Nurse Practitioner Blanchard at the Ochsner Lafayette General Orthopaedic Hospital.

On June 18, 2019, Plaintiff saw Dr. Hlavacek, who noted that she no longer had any signs of infection. Plaintiff's final visit with Dr. Hlavacek was on July 30, 2019, wherein he noted that "[Plaintiff] has been off antibiotics for 6 weeks and shows no clinical sign of infection" and that "[g]iven her laboratory values off of antibiotics for 6 weeks, her lack of redness[,] swelling[,] fevers[,] or other clinical signs of infection, there is a [sic] strong clinical evidence to support the assumption that her infection was successfully eradicated."

Plaintiff filed a complaint with the Louisiana Patient's Compensation Fund on May 10, 2019, and the Medical Review Panel unanimously issued an opinion

2

on April 26, 2021, in favor of all Defendants upon finding "all health care providers and facilities met the standard of care without deviation."

On August 12, 2021, Plaintiff filed suit against Defendants alleging that they were negligent in their care of her both during and after the May 11, 2018 surgery for her ankle fracture and that Defendants failed to meet the standard of care required to prevent a surgical site infection. Specifically, Plaintiff alleged that "[her] MRSA infection was not discovered until June 8, 2018, by another healthcare provider" and that she had to have "additional treatment that could have been avoided if [D]efendants had followed the recommended guidelines to prevent post-operative surgical site infection promulgated by the State of Louisiana, Department of Health and Hospitals, and the [Centers] for Disease Control, including additional surgeries and treatment by an infectious disease specialist."

Thereafter, Defendants filed answers to the petition denying all allegations of negligence, and affirmatively pleading that the care rendered to Plaintiff met the applicable standards of care required by Louisiana medical malpractice law pursuant to La.R.S. 9:2794. In January 2022, Defendants filed motions for summary judgment on the grounds that Plaintiff failed to produce any admissible expert evidence to support the position that any of the Defendants breached the standard of care in their involvement in Plaintiff's medical care and treatment. Defendants argued that because Plaintiff cannot produce such evidence, there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law. In support of their motions for summary judgment, Defendants attached the following evidence: (1) the May 10, 2019 Medical Review Panel Request; (2) the affidavits of the attorney chairperson of the Medical Review Panel, Gina Rush Calogero, and the Medical Review Panelists, Dr. Edward L. Morgan, Dr. Seth D. Rosenzweig, and Dr. Ricky D. Hendrix; (3) the opinions of

3

the panel signed by Ms. Calogero and the three physicians serving on the panel; (4) Plaintiff's petition for damages; (5) unanswered requests for admission dated November 30, 2021; and (6) an October 13, 2021 exception of vagueness and ambiguity, motion to strike and answer to petition for damages.

On February 7, 2022, Plaintiff filed an opposition arguing that "[t]he applicable standards of care are available on official government websites" and requested that the trial court take judicial notice of the standards of care as set forth on the government websites, such as the website of the Louisiana Department of Health and Hospitals ("LDH"), the website of the Center for Disease Control and Prevention ("CDC"), the website of the National Center for Biotechnology Information ("NCBI"), and the website of the Journal of American Medical Association ("JAMA"). In support of her opposition, Plaintiff attached the following evidence: Exhibit 1 - LDH Information on Methicillin Resistant Staphylococcus aureus; Exhibit 2 - 1999 Guideline for Prevention of Surgical Site Infection from the CDC; Exhibit 3 - 2017 Guidelines for Prevention of Surgical Site from the CDC; Exhibit 4 - eAppendix 1. "Centers for Disease Control and Prevention, Guideline for the Prevention of Surgical Site Infection 2017: Background, Methods, and Evidence Summaries; Exhibit 5 - Table 1, Summary Centers for Disease Control 2017 Evidence-Based Review Recommendations for Prevention of Surgical Site Infection: Core Sections; Exhibit 6 - Table 2, Prosthetic Joint Arthroplasty; Exhibit 7 - Table 3, Accepted Practices: Re-emphasis of Select 1999 CDC and HICPAC Recommendations for Prevention of SSI; Exhibit 8 - "MRSA Guidelines," Infectious Disease Epidemiology Section published by the LDH; Exhibit 9 - "MRSA Guidelines for Long Term Care Facilities (LTCF)," published by the LDH; Exhibit 10 - Certified medical records from Lafayette General Heath System (only cited records attached); Exhibit 11 - Certified medical

4

records from Lafayette General Ortho Clinic (only cited records attached); Exhibit 12 - Certified medical records from MDA – Acadiana Rehab (only cited records attached); Exhibit 13 - Certified medical records from Moreau Physical Therapy (only cited records attached); and Exhibit 14 - Certified medical records from Acadiana ID Associates, Dr. Okechukwu (only cited records attached). Although Plaintiff cites to Exhibit 16 as her discovery responses and Exhibit 17 as being her affidavit, she states that both of these exhibits will be supplemented. Alternatively, Plaintiff moved to continue the hearing to afford her more time to conduct discovery.

Thereafter, Defendants filed oppositions to Plaintiff's motion to continue, a motion to strike Plaintiff's offered evidence, an opposition to Plaintiff's request for judicial notice, and a reply in support of the motions for summary judgment. Following a hearing, the trial court signed a judgment on March 31, 2022, wherein it denied Plaintiff's request for judicial notice; granted a continuance on the summary judgment hearing, which allowed Plaintiff "an additional [ninety] days to obtain experts[;]" and reset the hearing on Defendants' motions for summary judgment for May 31, 2022.

In response to the March 31, 2022 judgment, both Plaintiff and Defendants filed applications for supervisory writs with this court. Specifically, Defendants sought review of the trial court's continuance of the hearing on summary judgment while Plaintiff sought review of the trial court's rulings denying her request for judicial notice, sustaining Defendants' objections to her evidence, and requiring her to provide expert evidence in opposition to the summary judgment motions. On May 12, 2022, this court denied all three applications for supervisory writs as well as Plaintiff's request for a stay. At the end of the sentence, suggest inserting the citations: *See Pollock v. MDA Consultants, LLC*, 22-268 (La.App. 3 Cir.

5

5/12/22) (unpublished writ decision), *writ denied*, 22-718 (La. 5/18/22), 338 So.3d 1186; *Pollock v. MDA Consultants, LLC*, 22-280 (La.App. 3 Cir. 5/12/22) (unpublished writ decision); and *Pollock v. MDA Consultants, LLC*, 22-285 (La.App. 3 Cir. 5/12/22) (unpublished writ decision).

Simultaneously with her application to this court, Plaintiff also filed an application for supervisory writ and request for stay with the Louisiana Supreme Court, which was denied on May 18, 2022.

On May 16, 2022, Plaintiff filed a supplemental opposition to the motions for summary judgment arguing that (1) La.R.S. 9:2794 does not explicitly require expert testimony, and thus, she does not need expert testimony to prevail on her medical malpractice claim, and (2) her allegations of negligence do not require expert testimony, as they are allegations of "negligence as a matter of law." As previously argued, Plaintiff stated that the standard of care is set forth by the CDC, LDH, and other governmental organizations and requested for the trial court to reconsider its prior ruling that medical expert testimony is required to meet her burden of proof. In support of her supplemental opposition, Plaintiff referenced, and attached, Exhibits 5, 6, and 7 from her original opposition. However, although Plaintiff referenced Exhibits 1, 2, 3, 8, and 9 that were filed with her original opposition, she did not attach these exhibits to her supplemental opposition.

On May 20, 2022, Defendants again filed objections to the Plaintiff's exhibits in her original and supplemental opposition arguing that the exhibits are hearsay, impermissible under La.Code Civ.P. art. 966(A)(4), and are not properly authenticated. Thus, Defendants objected and moved to strike all of Plaintiff's exhibits under La.Code Civ.P. art. 966(D)(2).

After the May 31, 2022 hearing, the trial court entered a judgment that sustained Defendants' objections to Plaintiff's Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 13,

14, and 15; ordered the exhibits stricken from the record; and granted Defendants' motions for summary judgment upon finding that there are no genuine issues of material fact. Plaintiff now appeals this judgment, alleging the following three assignments of error (record citations omitted):

> 1. The trial court erred in finding that C.C.P. Art. 966(A)(4) prohibits the court from judicially noticing documents as required by C.E. Arts. 201 and 202;

> 2. The trial court erred in finding that a medical expert is required to interpret regulations available to the general public on cdc.gov and ldh.la.gov; and

> 3. The trial court erred in dismissing "all claims" against the hospitals and nurse practitioner when the only issue set forth in the Motions for Summary Judgment under consideration by the court was whether [Plaintiff] could meet the burden of proof required by La. R.S. 9:2794 without medical expert testimony.

## STANDARD OF REVIEW:

The summary judgment procedure is expressly favored in the law and "is designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Duncan v. U.S.A.A. Ins. Co.*, 06-363, (La. 11/29/06), 950 So.2d 544. "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

The burden of proof on a motion for summary judgment rests with the mover: here, the Defendants. La.Code Civ.P. art. 966(D)(1). In this matter, the Defendants will not bear the burden of proof at trial; the burden of proof rests with the Plaintiff. Thus, once the Defendants properly support their motion for

7

summary judgment, then under La.Code Civ.P. art. 966(D)(1), they need only "point out to the court the absence of factual support for one or more elements essential" to the Plaintiff's medical malpractice claim.

Thereafter, the burden shifts to the Plaintiff "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the [Defendants are] not entitled to judgment as a matter of law." La.Code Civ.P. art. 966(D)(1). The Plaintiff "may not rest on the mere allegations or denials of [her] pleading, but [her] response . . . must set forth specific facts showing that there is a genuine issue for trial. If [she] does not so respond, summary judgment, if appropriate, shall be rendered against [her]." La.Code Civ.P. art. 967(B).

## DISCUSSION:

The first issue we will address is whether the trial court erred in finding that La.Code Civ.P. art. 966(A)(4) prohibits the court from judicially noticing documents as set forth by La.Code Evid. art. 201[2] and 202.[3] Plaintiff argues the

---

[2] Louisiana Code of Evidence Article 201 states, in pertinent part, as follows:

**A. Scope of Article.** This Article governs only judicial notice of adjudicative facts. An "adjudicative fact" is a fact normally determined by the trier of fact.

**B. Kinds of facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either:

(1) Generally known within the territorial jurisdiction of the trial court; or

(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

**C. When discretionary.** A court may take judicial notice, whether requested or not.

**D. When mandatory.** A court shall take judicial notice upon request if supplied with the information necessary for the court to determine that there is no reasonable dispute as to the fact.

[3] Louisiana Code of Evidence Article 202 states, in pertinent part, as follows:

**A. Mandatory.** A court, whether requested to do so or not, shall take judicial notice of the laws of the United States, of every state, territory, and other jurisdiction of the United States, and of the ordinances enacted by any political

8

trial court erred in granting Defendants' motions to strike her Exhibits 1 through 9 that were attached to her opposition because "Louisiana courts have admitted evidence from government websites without additional authentication for more than twenty years" and her exhibits "evidence the legally required, undisputable minimum standards of care that must be provided to individuals receiving care in a hospital in the State of Louisiana." Plaintiff alleges that "[t]he CDC and LDH Guidelines are admissible per C.E. Art. 201 and 202, . . . [and] warrant proceeding without a medical expert when the health care provider has a legal and contractual duty to comply with CDC and LDH guidelines published on cdc.gov and ldh.la.gov for the benefit of the public." In support of her argument, Plaintiff cites

---

subdivision within the court's territorial jurisdiction whenever certified copies of the ordinances have been filed with the clerk of that court.

**B. Other legal matters**. (1) A court shall take judicial notice of the following if a party requests it and provides the court with the information needed by it to comply with the request, and may take judicial notice without request of a party of:

(a) Proclamations of the President of the United States and the governor of this state.

(b) Rules of boards, commissions, and agencies of this state that have been duly published and promulgated in the Louisiana Register.

(c) Ordinances enacted by any political subdivision of the State of Louisiana.

(d) Rules which govern the practice and procedure in a court of the United States or of any state, territory, or other jurisdiction of the United States, and which have been published in a form which makes them readily accessible.

(e) Rules and decisions of boards, commissions, and agencies of the United States or of any state, territory, or other jurisdiction of the United States which have been duly published and promulgated and which have the effect of law within their respective jurisdictions.

(f) Law of foreign countries, international law, and maritime law.

(2) A party who requests that judicial notice be taken and the court, if notice is taken without request shall give reasonable notice during trial to all other parties.

**C. Information by court.** The court may inform itself of any of the foregoing legal matters in such manner as it may deem proper, and the court may call upon counsel to aid it in obtaining such information.

three cases: *Horrell v. Alltmont*, 19-945 (La.App. 1 Cir. 7/31/20), 309 So.3d 754; *State v. Carpenter*, 00-436 (La.App. 3 Cir. 10/18/00), 772 So.2d 200, *writ denied*, 00-3152 (La. 1/25/02), 806 So.2d 665; and *Daurbigney v. Liberty Pers. Ins. Co.*, 18-929 (La.App. 3 Cir. 5/9/19), 272 So.3d 69. However, we find the *Horrell* case is the only pertinent case to the issues before us as it was also decided on summary judgment and discussed the language of La.Code Civ.P. art. 966(A)(4).

In *Horrell*, 309 So.3d 754, the first circuit found that the trial court erred in granting summary judgment in favor of defendants because defendants had failed to submit documents supporting their affirmative defense of res judicata. Specifically, the first circuit found that "the trial court was in error in considering or taking judicial notice of the decisions of various courts and not requiring the defendants to attach or provide the necessary documents in order to properly grant the defendants' motion for summary judgment." *Id.* at 761. The first court stated, as follows:

> [W]ithout the appropriate supporting documentation in the record, there is nothing for this Court to review. There is no provision in La. C.C.P. art[.] 966 which will allow a party to support or oppose factual issues without proper documentation. In this case, the record before this Court contains no evidence showing the proper facts which would allow a determination that the present suit was barred by res judicata.

*Id.* (footnote omitted).

Under La.Code Evid. art. 201(B), a trial court has discretion to take judicial notice of a fact that is "not subject to reasonable dispute in that it is either: (1) [g]enerally known within the territorial jurisdiction of the trial court; or (2) [c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Courts have held that if this standard is satisfied, judicial notice may be taken of information obtained from the internet. *See State v. Bibbins,* 14-971, p. 1 (La.12/8/14), 153 So.3d 419 (noting that "[w]e

10

may take judicial notice that the impending landfall of Hurricane Isaac in southeast Louisiana led to the closure of the Orleans Parish Criminal District Court on August 28, 2012, and prevented the state from bringing defendant to trial on that date.[]).

In this case, we find Plaintiff did not furnish the trial court with sufficient information to permit the court to take judicial notice of the documents submitted in opposition to the motions for summary judgment. Plaintiff failed to show the reliability or authenticity of the documents and merely attached a variety of documents printed out from a variety of internet websites. As stated in *Wood v. Hackler*, 52,791, p. 8 (La.App. 2 Cir. 8/14/19), 276 So.3d 1136, 1141, *writ denied*, 19-1469 (La. 12/10/19), 285 So.3d 490: "[j]ust as a document or report from a private investigator is not self-authenticated, the same is true for the Internet. Stated perspicuously, the Internet is not self-proving." Accordingly, we find the trial judge was within her discretion in denying Plaintiff's request to take judicial notice of Exhibits 1 through 9 that Plaintiff attempts to use to satisfy her burden of producing expert medical testimony as to the standard of care for each defendant in this case.

Further, after reviewing the Louisiana Code of Evidence and the Louisiana Code of Civil Procedure, we agree with Defendants' argument that these two codes "are not in conflict" and that "courts are empowered to take judicial notice as a general principle." However, as the Defendants correctly point out, "there are some areas of the law, such as summary judgment, where the law provides exceptionally clear evidentiary rules," and, as such, Plaintiff's documents do not comply with the exclusive list under La.Code Civ.P. art. 966(A)(4).

Louisiana Code of Civil Procedure Article 966(A)(4) clearly states that "[t]he only documents that may be filed in support of or in opposition to the

motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." Louisiana Code of Civil Procedure Article 966(D)(2) states that the trial "court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made." If an objection to a document is raised, it "shall be raised in a timely filed opposition or reply memorandum[,]" and the trial court "shall consider all objections prior to rendering judgment . . . [and] shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider." *Id.* "The abuse of discretion standard is applicable to the trial court's rulings on objections to documents filed in support of or in opposition to a summary judgment motion that are raised by a party in a timely filed opposition or reply memorandum in accordance with La. C.C.P. art. 966(D)(2)." *Lucas v. Maison Ins. Co.*, 21-1401, p. 6 (La.App. 1 Cir. 12/22/22) __ So.3d __, __.

At the February 22, 2022 hearing, the trial judge addressed Defendants' objections and stated as follows: "I'm going to grant the motion to strike [Exhibits] 1 through 9, because those are not proper exhibits to a motion for summary judgment. They are not authenticated. They are simply documents printed off of the internet. The Court does not take judicial notice of such documents[.]" The trial judge further stated, as follows:

> THE COURT: And let me just say something else. Even if they're authenticated -- which they are not -- you still have to have somebody to be able to present some evidence that these standards were not followed. And just putting a bunch of paper in doesn't do that.
>
> . . . .
>
> THE COURT: What we're dealing with today is the lack of any expert opinion that any of these healthcare providers violated the standard of care.

12

This is not a res ipsa case. Okay? Because that's not -- Everyone -- You know, the medical professionals and everyone have told us, in their opinion -- which is the only thing that we have -- that, number one, they can't say that this actually occurred during the time of these people caring for [Plaintiff]; and, number two, that they see nothing in the records to indicate that they were in violation of the standard of care.

Following the hearing, the trial judge denied Plaintiff's request to take judicial notice of her exhibits one through nine in opposition to Defendants' motions. However, the trial judge granted Plaintiff a continuance and allowed her an additional ninety days to obtain an expert to satisfy her burden on summary judgment.

At the hearing on May 31, 2022, the trial judge, again, addressed Defendants' objections made to Plaintiff's Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 13, 14, 15, 16 and 17, as well as Defendants' motions for summary judgment and stated as follows, in pertinent part:

THE COURT: Okay. Well, you know, as to those things that were printed out off the internet, I sustain your objection. Because none of that falls within the parameters of what Code of Civil Procedure Article 966 allows, in terms of documents in support of a motion for summary judgment.

And I think that was the bulk of what you were objecting to, correct?

MS. SAVOY [Counsel for Defendants]: Yes, ma'am. Just to have the record clear, that was Plaintiff's Exhibits 1, 2, 3, 4, 5, 6, 7, 8, and 9. And, then, we objected as untimely, 13, 14 -- plaintiff actually skipped the number 15 -- and, then, 16 and 17.

THE COURT: Okay. And those were -- I'm trying to remember back from -- I know 1 through 9 were the items that were on the internet.

MS. SAVOY: Yes, ma'am.

THE COURT: Let's see.

MS. SAVOY: 13 and 14 were medical records that weren't attached, ever. And, to this date, have not been attached. But, out of an abundance of caution, we're still objecting to it.

13

THE COURT: Okay.

MS. SAVOY: She skipped 15. 16, plaintiff's discovery responses, which, to my knowledge, were never attached.

MR. GULOTTA [Counsel for Defendants]: I don't recall.

MS. SMITH [Counsel for Plaintiff]: No, they weren't.

MS. SAVOY: And 17 was the Plaintiff's affidavit. That was untimely at the initial hearing. Admittedly --

THE COURT: It's timely, now.

MS. SAVOY: -- we're here, now, so it's timely.

THE COURT: Yeah. It's timely.

MS. SAVOY: Yes, ma'am. So that would be 13, 14, 15 that doesn't exist, and 16, as well as -- are untimely.

THE COURT: Okay. Any response to that?

MS. SMITH: Your Honor, I maintain that the malpractice is as a matter of law and that expert testimony's [sic] not necessary.

And it's the same arguments that I made before, as well as what I laid out in my supplemental opposition, that the Louisiana Administrative Code and the title that governs hospitals - - [t]hey have to have an infection and control program that meets or exceeds the criteria established by the CDC.

And state and federal law require the CDC and the Louisiana Department of Health to post all of their requirements on government websites. And those requirements have been posted.

. . . .

THE COURT: . . . All right. Well, again, I understand what your argument is. But the fact of the matter is that the existence of these regulations in and of themselves does not establish the standard of care for these healthcare providers.

The regs themselves have to be interpreted -- how they apply, when they apply, to whom they apply. I think Ms. Savoy pointed this all out in great detail in her memo.

As I told you the last time - - that's why I gave you 90 days -- that you needed to go get an expert. And you haven't gotten an expert.

> So, at this time, the Court is going to grant both [Defendants']
> motions for summary judgment. The Court finding that the plaintiff
> would not be able to carry her burden of proof at trial as to a breach of
> the standard of care, because there is no expert testimony that
> indicates that there was a breach.

After a review of Louisiana's statutory law, we find no error in the trial

court's ruling that sustained Defendants' objections to Plaintiff's Exhibits 1

through 9. Again, La.Code Civ.P. arts. 966 and 967 do not permit a party to utilize

unsworn and unverified documents as summary judgment evidence. As stated in

*Unifund CCR Partners v. Perkins*, 12-1851, p. 8 (La. App. 1 Cir. 9/25/13), 134 So.

3d 626, 632, "[i]n meeting the burden of proof, unsworn or unverified documents,

such as letters or reports, annexed to motions for summary judgment are not self-

proving and will not be considered; attaching such documents to a motion for

summary judgment does not transform them into competent summary judgment

evidence." Accordingly, we find no merit to Plaintiff's argument that the trial

court erred in failing to take judicial notice of documents obtained from various

government websites in support of her opposition to Defendants' motions for

summary judgment.

The second issue we address is whether the trial court erred in finding that a

medical expert is required to interpret regulations available to the general public on

cdc.gov and ldh.la.gov. This court addressed the substantive law applicable to

medical malpractice cases in *Simon v. Allen Oaks, LLC*, 20-5, pp. 6-7 (La.App. 3

Cir. 6/10/20), 298 So.3d 881, 885-886, and stated as follows:

> The requirements of establishing malpractice based on the
> negligence of a physician are found in La.R.S. 9:2794(A), which
> requires that a plaintiff establish: (1) the standard of care applicable to
> the doctor; (2) a violation by the doctor of that standard of care; and
> (3) a causal connection between the doctor's alleged negligence and
> the plaintiff's injuries. The standard of care is generally that degree of
> knowledge or skill possessed or the degree of care ordinarily
> exercised by doctors licensed to practice in the state of Louisiana and
> actively practicing in a similar community or locale and under similar

circumstances. La.R.S. 9:2794(A)(1). "However, emergency room physicians are held to the standard of care of specialists in emergency care." *Wright v. HCA Health Servs. of Louisiana*, 38,427, p. 7 (La.App. 2 Cir. 6/23/04), 877 So.2d 211, 215.

"The plaintiff in a medical malpractice suit against a hospital has a burden of showing that the hospital personnel negligently departed from the recognized standard of care afforded by hospitals in the area for the particular malady involved." *Jones v. Rapides Gen. Hosp.*, 598 So.2d 619, 621-22 (La.App. 3 Cir. 1992); *Miller v. Tulane Univ. Hosp.*, 09-1740 (La.App. 4 Cir. 5/12/10), 38 So.3d 1142.

Expert testimony is required to establish the standard of care of both the physician and hospital in a medical malpractice action, unless the negligence complained of is so obvious that a layperson can infer the negligence without the aid of expert testimony. *Pfiffner v. Correa*, 94-992 (La. 10/17/94), 643 So.2d 1228; *Miller*, 38 So.3d 1142.

Additionally, "[t]he jurisprudence has held that this requirement of producing expert medical testimony is especially apt when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence that the treatment met the applicable standard of care." *Methvien v. Our Lady of the Lake Hosp.*, 22-398, pp. 6-7 (La.App. 1 Cir. 11/4/22) __ So.3d __, __.

In moving for summary judgment, Defendants submitted a copy of the medical review panel opinion finding that the evidence did not support a conclusion that any of the Defendants breached the applicable standard of care. Specifically, the Reasons for Opinion stated:

It is the opinion of the Medical Review Panel that the [D]efendants . . . did not deviate from the standard of care which is required of health care providers, their staff and/or employees of the same specialty for the following reasons: [t]he health care providers appropriately identified the injury and treated correctly without deviation from standard of care for orthopedic surgery with appropriate surgical technique, wound care and follow up. There is no evidence in the records that indicates any deviation from the standard of care in the treatment of this patient. The post-operative care met standard of care without deviation. The appropriate antibiotic regimen was utilized with appropriate consultants. There was no deviation from the standard of care in the perioperative care following the surgery. In conclusion, all health care providers and facilities met the standard of care without deviation.

Thereafter, the burden shifted to Plaintiff to present medical evidence in the form of expert testimony to establish a genuine issue of material fact. Since Plaintiff presented no competent expert evidence in support of her medical malpractice claims, we find the trial court properly granted summary judgment dismissing Plaintiff's malpractice claims.

We also find no merit to Plaintiff's third assignment of error that "[t]he trial court erred in dismissing 'all claims' against the hospitals and nurse practitioner when the only issue set forth in the Motions for Summary Judgment under consideration by the court was whether [Plaintiff] could meet the burden of proof required by La.R.S. 9:2794 without medical expert testimony." Plaintiff's petition alleges that the Defendants failed to meet the required standard of care in their medical treatment of her throughout the repair of her right ankle fracture and subsequent surgical site infection. However, in opposing the Defendants' motions for summary judgment, Plaintiff failed to present any evidence to establish the standard of care and/or that there was a causal connection between the alleged substandard care and her alleged injuries. Because Plaintiff failed to satisfy her burden under La.Code Civ.P. art. 966(D)(1) "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law[,]" we find the trial court properly granted Defendants' motions for summary judgment and dismissed Plaintiff's case.

For the foregoing reasons, we affirm the judgment of the trial court granting Defendants' motions for summary judgment and dismissing Plaintiff's claims. Costs of this appeal are assessed to Plaintiff, Joan Marie Pollock.

**AFFIRMED.**

17